IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50143
_____

UNITED STATES OF AMERICA,

                        Plaintiff-Appellee,

v.

JOE T. BOYD,
WALLACE B. BRUCKER

                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Texas
(MO-95-CR-28)
_____
March 27, 1997
Before REAVLEY, KING, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

    Joe T. Boyd and Wallace B. Brucker challenge their

convictions and sentences for mail fraud and conspiracy to commit

mail fraud under 18 U.S.C. §§ 371, 1341.  Finding no reversible

error, we affirm.

I.    BACKGROUND

_____

    [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Boyd and Brucker were both involved with the operations of Med-America Diagnostics, Inc. ("Med-America"), in Midland, Texas. Boyd owned Med-America. Both Boyd and Brucker performed medical activities, such as examining, making diagnoses, and requesting tests on patients, at Med-America. Neither was a licensed physician.

Boyd and Brucker participated in a scheme at Med-America to solicit patients for physician services, require numerous unnecessary and costly tests, and bill the patients' insurance provider for the costs. In order to induce payment from Medicare and private insurance providers, Boyd and Brucker caused the claim forms to reflect that the medical tests and procedures had been conducted by or ordered by, or in some instances referred for testing by, a licensed medical doctor. The names of licensed doctors were used without the permission or knowledge of those doctors.

Boyd and Brucker were indicted for their activities in connection with Med-America on May 10, 1995. Boyd was charged with one count of conspiracy to use the mails for the purpose of effecting a fraud under 18 U.S.C. §§ 371 and 1341 and nine counts of fraud accomplished through use of the mails under 18 U.S.C. §§ 1341 and 1342. Brucker was likewise charged with one count of conspiracy to use the mails to effect a fraud, but was only charged with two counts of actual fraud through use of the mails.

2

On November 7, 1995, a jury found Boyd and Brucker guilty on all of the indicted charges. The district court sentenced Boyd to concurrent sixty-month terms of imprisonment. Additionally, the court ordered a three-year term of supervised release to follow his imprisonment, as well as monetary restitution. Brucker was sentenced to a five-month prison term and a two-year period of supervised release, with five-months of this period to be served under electronic monitoring/home confinement conditions. The court also ordered Brucker to make monetary restitution.

Thereafter, Boyd and Brucker appealed to this court. Although Boyd and Brucker advance separate, individualized arguments on appeal, they essentially raise the same four issues[1]: (1) whether the evidence was sufficient for their convictions; (2) whether the district court erred in admitting the deposition of a deceased witness, Dr. E.T. Driscoll, over objections that defendants were being denied their constitutional right to confront the witness; (3) whether the district court erred in denying Boyd's motion for severance of a co-defendant, thereby violating defendants' right to confront the co-defendant;

---

[1]Brucker does not *per se* make all four arguments in his brief before the court, but instead concludes his brief with the following, "Appellant Brucker hereby incorporates, by reference, and adopts all of the propositions and law contained in appellant Boyd's brief previously filed herein."

and (4) whether the district court properly calculated defendants' sentences.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

This court reviews challenges to the sufficiency of the evidence in a criminal case to determine whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Pedroza*, 78 F.3d 179, 182 (5th Cir. 1996). We consider all the evidence and all reasonable inferences drawn from it in the light most favorable to the jury's verdict. *See Glasser v. United States,* 315 U.S. 60, 80 (1942); *United States v. Johnson*, 87 F.3d 133, 136 (5th Cir. 1996).

To prove a conspiracy under 18 U.S.C. § 371 the government must prove, beyond a reasonable doubt, (1) that two or more people agreed to pursue an unlawful objective together, (2) that the defendants voluntarily agreed to join the conspiracy, and (3) that one conspirator performed an overt act to further the conspiracy's objective. *See United States v. Parekh*, 926 F.2d 402, 406 (5th Cir. 1991). A conviction under 18 U.S.C. § 1341 for mail fraud requires the government to "show that the defendant[s] (1) used a scheme to defraud, (2) which involved a use of the mails, (3) and that the mails were used for the

4

purpose of executing the scheme." *See United States v. Nguyen*, 28 F.3d 477, 481 (5th Cir. 1994).

### 1.   Boyd's Convictions

Even if the court assumes, for the sake of argument, that Dr. Driscoll's deposition was erroneously admitted, the remaining trial record still shows that Boyd participated in the conspiracy to commit mail fraud.  Trial testimony overwhelmingly showed that Boyd joined with other participants from Med-America to effect the prearranged scheme and that he took action in many instances to execute the scheme.  *See United States v. Parekh*, 964 F.2d 437, 449 (5th Cir. 1992) (noting that the government may prove the existence of a conspiracy through circumstantial evidence).  Boyd does not argue that his participation in the scheme was involuntary or that the scheme did not invoke the use of the mails.

The nine mail fraud counts against Boyd alleged that he took part in the mailing of billing records that fraudulently represented to coverage providers[2] that Dr. Driscoll or another doctor, Dr. Larry Sands, was the referring physician for medical procedures.  To prove a violation of 18 U.S.C. §§ 1341 and 1342, the government was required to show that Boyd had specific intent

---

[2]The indictments specifically alleged that Sentry Life Insurance Company, Medicare Part B, and Blue Cross and Blue Shield of Texas, Inc., were the recipients of the fraudulent documents.

5

to defraud in his activities connected to the billings and demonstrate that Boyd intended for harm to result from his deceit. *See United States v. Jimenez*, 77 F.3d 95, 97 (5th Cir. 1996).

The trial testimony of Med-America employees and patients was sufficient to establish Boyd's participation in the fraudulent billings.[3] In addition, Dr. Sands's own testimony showed that he did not refer the patients on whose record his name appeared, and in fact he noted that he had never seen the patients whose experiences were the basis for the five counts that specifically alleged the fraudulent representations using his name. Furthermore, assuming *arguendo* that Dr. Driscoll's deposition statement was inadmissible, sufficient evidence from Med-America's employees and Driscoll's purported patients at Med-America, nevertheless, supported the conviction for the fraudulent representation of Driscoll's name on the remaining four counts. The testimony also reflected the fact that Boyd specifically intended for pecuniary harm to result from his

---

[3]The testimony sufficiently established that Boyd gave the permission to his billing clerks for the use of Dr. Driscoll and Dr. Sands's names on the billings. The Executive Director of Med-American testified, in particular, that Boyd was active in the billing process. The Executive Director further noted that Boyd had represented to him that Dr. Driscoll was Med-America's Chief of Staff and that the decision to use Dr. Sands's name was made by Boyd.

6

deceit.  Thus, all of the counts against Boyd had sufficient evidentiary support.

    2.   <u>Brucker's Convictions</u>

Evidence of Brucker's practice of ordering testing on the insured patients he examined, without consultation with Dr. Driscoll or Dr. Sands, is sufficient to support his participation in the conspiracy.  *See United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996) ("Once the government has established an illegal conspiracy, it need only introduce 'slight evidence' to connect an individual defendant to the common scheme").

Brucker was charged with only two counts of mail fraud.  The record contains sufficient evidence to support the jury's determination on both counts.

**B.    <u>Admission of Driscoll's Deposition</u>**

Boyd and Brucker argue that it was harmful error on the part of the district court to admit the deposition of Dr. Driscoll.  Boyd and Brucker claim that the district court violated their Sixth Amendment right to confront an adverse witness when it admitted the deposition.

Dr. Driscoll's deposition had been taken by an attorney with the Texas Attorney General's office in 1990 in connection with a civil suit the state was pursuing against Med-America at that time.  Dr. Driscoll died in the period between the time of the giving of the deposition and the trial of the case below.

7

We review the district court's decision to admit testimony of this kind for abuse of discretion. *See United States v. Tannehill*, 49 F.3d 1049, 1057 (5th Cir. 1995). Our review includes harmless-error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680-682 (1986); *United States v. Stewart*, 93 F.3d 189, 194 (5th Cir. 1996).

Assuming, *arguendo,* that it was error for the district court to admit Dr. Driscoll's deposition, we, nevertheless, find that such error was harmless as to both Boyd and Brucker. Other evidence overwhelmingly showed that Boyd had committed mail fraud and was involved in a conspiracy. The district court's instruction to the jury not to consider the deposition as evidence against Brucker,[4] in addition to other trial evidence that sufficiently exhibited his participation in the activities that were the basis for the counts against him, was sufficient to prevent harmful error to Brucker with the admission of the deposition. Thus, the deposition, within the purview of all the evidence, did not have "a 'substantial impact' on the jury's verdict" in either Boyd or Brucker's case. *See United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991) (holding that inadmissible evidence is only harmful if it has a 'substantial impact' on the jury's verdict).

---

[4]Brucker, although initially named in the prior civil suit, was never served and was not part of the judgment in the case.

**C.    Severance of Co-defendant's Case**

Boyd argues[5] that the district court erred in denying his "Motion to Quash, Motion to Suppress and Motion to Severance" with regard to his co-defendant, Richard W. Bratcher. Boyd claims that the failure to sever Bratcher's case, in conjunction with Bratcher's unavailability to testify, denied his Sixth Amendment right to compulsory process and confrontation.

The district court is under the obligation to grant a severance "only if there is serious risk that joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence." *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). "[W]here joinder is proper in the first instance, we will review only for abuse of discretion." *See United States v. Krenning,* 93 F.3d 1257, 1266 (5th Cir. 1996). "In conspiracy cases, the general rule is that persons indicted together should be tried together." *See United States v. Fields*, 72 F.3d 1200, 1215 (5th Cir. 1996). We hold that it was not abuse of discretion for the district court to deny Boyd's motion for severance. *See, e.g., United States v. Krenning*, 93 F.3d at 1266-67 (holding that it was not abuse of discretion for the district court to deny severance where the indictment did not

---

[5]Brucker adopts Boyd's argument by reference.

allege multiple conspiracies, but rather a single scheme with multiple purposes).

Furthermore, any error as to Boyd and Brucker was not harmful. Bratcher was effectively severed from Boyd's case,[6] and did not present evidence against Boyd since he did not testify at trial. Boyd's real complaint is that he did not have Bratcher's testimony to counter the injurious statements given by Bratcher's patients. Even if Bratcher had been available, however, Boyd could not have forced him to testify in violation of Bratcher's Fifth Amendment right against self-incrimination. *See Holsen v. United States,* 392 F.2d 292, 293 (5th Cir. 1968). The patients' testimony was properly admissible over any hearsay objections as statements made by co-conspirator Bratcher in furtherance of the conspiracy. *See* FED. R. EVID. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 182 (1987).

D.    **Calculation of Sentences**[7]

_____

[6]The government pronounced Bratcher incompetent to stand trial, and noted he would not be a witness, prior to the commencement of the trial below.

[7]The upward departure issue has been abandoned. Boyd's brief has only one sentence about it, and Brucker has simply adopted Boyd's brief. We address that issue only in the alternative.

10

Boyd argues[8] that the district court erred in using a monetary amount that reflected all of Med-America's billings and insurance receivables in calculating his sentence and in finding that Med-America's activities targeted vulnerable or aged people.

A sentencing decision requires information with "sufficient indicia of reliability to support its probable accuracy." *See United States v. Alfaro*, 919 F.2d 962, 964 (5th Cir. 1990). The information can be any relevant evidence, without regard to admissibility under the rules of evidence, including the government's presentence report. *See id.* at 966. Despite Boyd and Brucker's objections, the district court judge was within his province to rely on the government proffered evidence to establish the monetary amount and the targeting of vulnerable and aged people in an upward departure because the evidence possessed the requisite "indicia of reliability." *See United States v. Ismoila*, 100 F.3d 380, 394-96 (5th Cir. 1996) (reviewing sentencing court's factual determinations for clear error, and holding that monetary loss determinations in a wire fraud scheme can be based on intended loss).

### III.    CONCLUSION

---

[8]Brucker appears to adopt Boyd's argument by reference, although Brucker successfully objected to the monetary amount used to calculate his sentence, and the court subsequently held Brucker accountable for only the amounts associated with patients he had seen. Brucker did not further object to the amounts attributed to him after he had received this adjustment.

11

Boyd's appeal is ORDERED submitted on the briefs.

We AFFIRM Boyd's and Brucker's convictions and sentences.